## STATE v. THOMPSON.

No. 1769. Decided November 19, 1906 (87 Pac. 709).

1. ADULTERY—INFORMATION—ELEMENTS OF OFFENSE.—An information alleging that defendant, a married man, on February 13, 1905, and on divers other days thence continuously, between February 13, 1905, and August 1, 1905, committed adultery with J., an unmarried woman, charged sufficient facts to constitute the crime of adultery as defined by Revised Statutes 1898, section 4310.

2. INFORMATION—DUPLICITY.—An information for adultery alleged that defendant, a married man, on February 13, 1905, and on divers other days thence continuously between such date and August 1, 1905, committed adultery with J., an unmarried woman. Held, that the information did not sufficiently charge an offense committed on any other date than February 13, 1905, and was therefore not objectionable for duplicity in violation of Revised Statutes 1898, section 4734, as amended by Session Laws of 1899, p. 51, c. 31, providing that an information shall charge but a single offense, the continuendo being mere surplusage.

3. ADULTERY—ELEMENTS OF OFFENSE—CONTINUANCE.—Adultery is not a continuous offense, but each act of adultery constitutes a separate offense.

4. SAME—EVIDENCE—OTHER ACTS OF ADULTERY.—Where an information charged adultery committed on February 13, 1905, the state was not limited to proof of adultery committed on that date, but was entitled to introduce proof of an adulterous act committed on February 1, 1905.

5. SAME.—In a prosecution for adultery with a woman alleged to have never been married, evidence of a physician who had examined her on the day of the trial that she was about eight months in pregnancy and that, in his judgment, conception took place in the early part of the previous February was competent to corroborate prosecutrix, and show that a crime had been committed, though it did not indicate that defendant participated therein.

6. SAME—SUBSEQUENT ACTS.—Where, in a prosecution for adultery, the information charged the adulterous act to have been committed, on February 13, 1905, but the state elected to prove an act of adultery committed on February 1st of that year, evidence of a physician who had examined prosecutrix that, in his judgment conception took place during the early or middle part of February, justified an inference by the jury that conception took place on or about the 1st of February, and was therefore not objectionable as necessarily tending to prove another subsequent adulterous act.

7. CRIMINAL LAW—TRIAL—CONTRADICTORY INSTRUCTIONS.—In a prosecution for adultery the court charged that if the jury believed beyond a reasonable doubt that prosecutrix was pregnant, they should consider such fact in connection with other evidence as tending to connect defendant with the crime or corroborate prosecutrix's testimony, but that such pregnancy was not of itself any evidence that defendant had had sexual intercourse with prosecutrix. Held, that such instruction was objectionable as contradictory.

8. ADULTERY—INSTRUCTIONS—PREGNANCY.—Revised Statutes 1898, section 4862, provides that a conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence, which in itself, and without aid of the accomplice's testimony tends to connect the defendant with the commission of the offense, etc. Held, that an instruction in a prosecution for adultery that the jury should consider the fact of prosecutrix's pregnancy as tending to connect defendant with the crime or corroborate her testimony, was erroneous, and was not cured by a subsequent clause that such fact was in itself insufficient to show that defendant had intercourse with her.

9. CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT.—An instruction that a reasonable doubt is not a mere possible doubt, but a fair doubt, growing out of the evidence or lack of evidence, and exists when each juror is unable to say that he has an abiding conviction to a moral certainty of the truth of the charge, etc., was not objectionable as in effect charging that such doubt existed only when all the jurors have a reasonable doubt.

10. SAME—APPEAL—PREJUDICE.—Where in a prosecution for adultery alleged to have been committed in February, 1905, defendant as a witness in his own behalf, testified that he was then a married man, living with his wife and children, he was not prejudiced by the alleged erroneous admission of a marriage certificate without evidence showing the identity of the parties.

11. MARRIAGE—EVIDENCE.—A marriage may be proved, not only by the marriage certificate or a certified copy of the record, but also by the person who performed the ceremony, by a person who witnessed it, by cohabitation and other circumstances, and by admissions.

12. SAME—IDENTITY OF THE PARTIES.—Where a marriage is sought to be established by a marriage certificate or a certified copy of the record, there must be some evidence showing the identity of the parties.

13. SAME.—Where a marriage is sought to be proved by the marriage certificate, evidence that the real name of one of the parties differed from the name stated in the marriage certificate was admissible.

McCARTY, C. J., dissenting in part.

APPEAL from District Court, Millard County; Joshua Greenwood, Judge.

Axel Thompson was convicted of adultery, and he appeals.

REVERSED.

New trial granted.

Ray Van Cott for appellant.

M. E. Breeden, Attorney-General, for the State.

APPELLANT'S POINTS.

It was error to permit Tora Jensen to testify to alleged acts of sexual intercourse occurring at a time on or about the 1st day of February, 1905, a time wholly outside of the time alleged in the information. (Commonwealth v. Thrasher, 77 Mass. 450; 2 Greenleaf on Evidence, sec. 47.)

It was also error to permit Tora Jensen to state that she was pregnant at the time of the trial and in permitting her

to state, the last time that she menstruated.. (*Commonwealth v. O'Connor,* 107 Mass. 219, 221; *Hilton v. State* [Tex.], 53 S. W. 113, 115; *Barnes v. State* [Tex.], 39 S. W. 684; 686; *State v. Brassfield,* 81 Mo. 151, 51 Am. Rep. 234.

### RESPONDENT'S POINTS.

The testimony from the prosecutrix that she was in the family way at the time of the trial, was not inadmissible and immaterial. She being and having always been an unmarried woman, the fact of pregnancy was positive proof of illicit connection with some one. It did not fix the plaintiff in error as a participant therein; but it was a fact in the case, not incompetent to be made known to the jury. (*Armstrong v. People,* 70 N. Y. 38; *People v. Goodwin* [Cal.], 64 Pac. 561; *State v. Hasty* [Ia.], 96 N. W. 115; *Powell v. State* [Tex.], 44 S. W. 504; *State v. Wickliff* [Ia.], 64 N. W. 282.

### STRAUP, J.

1. The defendant was convicted of adultery and appeals. It was alleged in the information that the defendant, a married man, "on the 13th day of February, 1905, and on divers other days and thence continually between the said 13th day of February, 1905, until the 1st day of August, 1905," committed adultery with Tora Jensen, an unmarried woman. To this information a demurrer was filed on the grounds that no offense was alleged, and that more than one offense was charged. It is urged that instead of charging adultery there is charged the crime of living in a state of adultery, which is not a crime under the Penal Code. It is true that living in a state of adultery is not made an offense by statute. The information, however, charges sufficient facts to constitute the crime of adultery as defined by section 4210, Revised Statutes 1898. An offense of adultery committed on a specified day and year is charged. Whether the information is open to the objection of duplicity is more serious. Section 4734, Revised Statutes 1898, as amended by chapter 31, p. 51, Sess. Laws, 1899, provides that an information or indictment must

charge but one offense. It is urged by appellant that by this information more than one offense of adultery is charged. We think not. Every information or indictment, to be adequate, must allege a day and year on which the offense was committed. It is inadequate to charge an offense committed at some indefinite time between two specified days. The information charged an offense committed on a specified day and year, the 13th day of February, 1905. It did not sufficiently charge another offense committed on another specified day and year. It only charged an offense committed at some indefinite time between two specified days. But such an allegation is inadequate to charge an offense. If a count attempts to charge two or more offenses, yet, but one of them sufficiently, the information is not double; to be so, it must have complete averments of not less than two. Had the information charged two adulterous acts committed on two separate and specified days, then it could be said two offenses had been charged. But this information does not so charge. Under it, the defendant could be convicted of but one offense. The allegation that the defendant committed the offense at an indefinite time on divers days between two specified days does not charge any offense, and may be rejected as surplusage. The allegation that the offense was committed on a certain day and thence continually between certain days, charges but one offense, because the day of another offense committed is not sufficiently specified. Each act of adultery constitutes a separate offense. Adultery is not a continuous offense. A *continuando* is not necessary unless for an essentially continuous offense. When an information sufficiently charges an offense, not essentially continuous, committed on a specified day and year with an unnecessary *continuando,* the *continuando* does not injure the information, but may be rejected as surplusage. The views herein expressed are supported by the following authorities: *State v. Briggs,* 68 Iowa 416, 27 N. W. 358; *People v. Adams,* 17 Wend. (N. Y.) 475; *State v. Nichols,* 58 N. H. 41; *Cook v. State,* 11 Ga. 53, 56 Am. Dec. 410; Wharton, Crim. Pl. and Pr. (9th Ed.), section 125; Bishop's New

Crim. Proc., sections 395-396, 440. While the form of this pleading is not to be commended, yet, for the foregoing reasons, we are of the opinion that the information is not open to the objection of duplicity. No error was committed in overruling the demurrer.

2. Over appellant's objection the state was permitted to give evidence of an adulterous act committed on the 1st day of February, 1905. It was as to that day and as to that offense that the case of the state was directed. It is claimed by the appellant that the state could not allege an offense committed on the 13th day of February, and prove an offense committed on the 1st day of February. The contention made is fully answered against appellant in the cases of *State v. Woolsey,* 19 Utah 486, 57 Pac. 426, and *State v. Hilberg,* 22 Utah 27, 61 Pac. 215, where the matter is fully discussed.

3. The case was tried on the 18th day of October, 1905. The prosecutrix testified that she was and always had been a single and unmarried woman, and that she never had sexual intercourse with any person other than the defendant. Over defendant's objection, she was permitted to state that at the time of the trial she was pregnant. A physician, who had examined her on the day before the trial, was permitted to state, over defendant's objection, that the prosecutrix was about eight months in pregnancy and that, in his judgment, conception took place during the early part of the month of February, or possibly the middle. It is claimed that this evidence was incompetent (1) because it did not tend to show that the defendant had sexual intercourse with the prosecutrix, and (2) that it was indirectly permitting the state to prove an adulterous act subsequent to the one relied on for a conviction. The prosecutrix being, and having always been, an unmarried woman, the fact of pregnancy was positive proof of illicit connection with some one. It did not fix the appellant as the participant therein, but it was a fact in the case competent to be made known to the jury as corroborative of the testimony of the prosecutrix that a crime had been committed on or about the time relied on for a conviction. For such purpose the testimony was competent and properly re-

ceived. (*Armstrong v. People,* 70 N. Y. 38; *People v. Goodwin,* 132 Cal. 368, 64 Pac. 561; *State v. Wickliff,* 95 Iowa 386, 64 N. W. 282.) From the pregnant condition of the presecutrix and the period of gestation as described to the jury, they might find that conception took place on or about February 1st, the time elected by the state for a conviction, and hence the testimony is not open to the objection that it necessarily tended to prove another and subsequent adulterous act.

4.    The court charged the jury: "You are instructed that some testimony has been given tending to show that the witness Tora Jensen (the prosecutrix) is now in delicate health, or, in other words, is pregnant. If you believe beyond a reasonable doubt that she is pregnant, then, in that event, you may take that fact into consideration in so far as it may in connection with other evidence, tend to connect the defendant with the crime or corroborate her testimony. Nevertheless, I charge you that such fact, if you believe beyond a reasonable doubt that it is a fact, is not of itself any evidence that the defendant has had sexual intercourse with the said Tora Jensen." The giving of this instruction is assigned as error. It is contended that the court charged the jury that it may consider the fact of pregnancy as tending "to connect the defendant with the crime," and that this is an erroneous statement of the law; and that when the court in the subsequent sentence charged the jury that pregnancy "is not of itself any evidence that the defendant has had sexual intercourse with" the prosecutrix, the jury were given inconsistent instructions, and were misled as to the purpose for which this evidence could properly be considered by them. The point is well taken. The prosecutrix was an accomplice. Section 4862, Revised Statutes 1898, provides:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

It was therefore essential to a conviction that there be evidence corroborative of the testimony of the accomplice "which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." As heretofore shown, the fact of pregnancy was competent for the purpose of showing that an offense was committed and as corroborative of the testimony of the prosecutrix as to such fact. But it was not competent proof as tending to connect the defendant with the commission of the offense. When the court charged the jury, as it did, that they may consider it for such purpose, it committed error. It cannot be said that the error was cured by the subsequent sentence referred to. The instruction fairly construed means that the jury may consider the fact of pregnancy in connection with other evidence as tending to connect the defendant with the commission of the offense, but that within itself it is not sufficient to do so. But, as before pointed out, it was not competent evidence to be considered at all as connecting the defendant with the commission of the offense. It was competent only as to the commission of an offense, and could not properly be considered by the jury for any other purpose, and they should so have been instructed. Where evidence is received in a case which is admissible only for a certain purpose, and inadmissible for other purposes to which the jury unaided may properly apply it, it is essential that the court should correctly instruct them as to the purpose for which they may consider the evidence. The prosecutrix being an accomplice and requiring corroboration, and the court erroneously instructing the jury with respect to what may be considered by them as corroboration tending to connect the defendant with the commission of the offense, it is at once apparent that the error committed was prejudicial to the defendant.

5. It is also claimed that the court erred in giving the following instruction: "You are instructed that a reasonable doubt is not a mere possible doubt, because everything relat-

ing to human affairs and depending on moral evidence is open to some possible or imaginary doubt. A reasonable doubt is a fair doubt, growing out of the evidence or lack of evidence, and exists when each juror, after a careful and conscientious consideration and comparison of all the evidence in the case is unable to say that he has an abiding conviction to a moral certainty of the truth of the charge. Or, in other words, it is not a mere imaginary, captious, or possible doubt, but a doubt based upon reason and common sense." It is urged by appellant that this instruction is open to the meaning that a reasonable doubt of a juror exists only when all of the jurors have a reasonable doubt. We do not think the instruction is open to such meaning. We think the fair and ordinary meaning of the instruction is that a reasonable doubt exists when each juror is unable to say that he has an abiding conviction to a moral certainty of the truth of the charge. "Each" as used in the instruction is a distributive adjective and means "when the same thing is to be predicated of all the individuals considered distributively or one by one." ( Standard Dict.) It denotes or refers to every one of the persons mentioned. Every one of any number separately considered. (3 Words & Phrases, 2299.) So construing the language the instruction means, unless each and every one of the jurors, all of them, are able to say that he has an abiding conviction to a moral certainty of the truth of the charge, a reasonable doubt exists. In other words, when any one of the jurors is made so to say, then a reasonable doubt exists. In fact the instruction is more favorable to the defendant than is the law. For that, in case any one of the jurors is unable so to say, not only would it afford a basis for the existence of a reasonable doubt as to him, but also for the jury as a whole. While true, so long as any one of the jurors entertains a reasonable doubt the defendant cannot properly be convicted, yet merely because one juror entertains a reasonable doubt it does not in and of itself necessarily afford a basis for the existence of a reasonable doubt as to the other jurors. But the court in effect charged the jury that if any one of them is unable to say that he has an abiding conviction, etc., then not only does there exist a reasonable

doubt as to him, but also as to all the jury, although the others, upon a consideration and comparison of all the evidence, have an abiding conviction, etc. And because one juror entertains a reasonable doubt, therefore all jurors must do so, and therefore a verdict of not guilty must be rendered. Be this as it may, we are well satisfied that the jury could not and did not get any meaning from the instruction other than the one that before the defendant could properly be convicted, each and all of the jurors must be able to say that he has an abiding conviction to a moral certainty of the truth of the charge; and so long as any one of them could not so say, a conviction could not properly be had. While the law as to the existence of a reasonable doubt is not very happily stated, yet we do not think the instruction is open to the meaning contended for by appellant, or that the jury were misled by it in applying a wrong principle of law.

6. It is further claimed that the court erred in admitting in evidence a marriage certificate showing a marriage between Axtel M. Thompson and Annie Skeen. The defendant's true name is Axel M. Thompson. The objection urged against this evidence was that the name in the certificate is that of a person other than the accused, and that the certificate was not sufficiently identified. It was shown by the testimony of a minister that about eleven years ago he married the defendant and Annie Skeen, and that they from thence on to and including the month of February, 1905, lived together as husband and wife. By other testimony it was also shown that in February, 1905, the defendant was, and prior thereto had been, a married man living with his wife whose name before the marriage was Annie Skeen. The defendant was a witness on his own behalf, and testified that in February, 1905, he was a married man living with his wife and children. In view of the defendant's testimony, and of his admission on the witness stand that he was a married man, and there being no conflict in the evidence as to such fact, it is wholly immaterial to determine whether the court committed error in admitting in evidence the marriage certificate. The marriage of the defendant to a woman other than the prosecutrix

is sufficiently and indisputably established, not only by other evidence wholly independent of the certificate, but by the testimony of the defendant himself. A marriage may be proven not only by the marriage certificate, or a certified copy of the record, but also by the person who performed the ceremony, by a person who witnessed the ceremony, by cohabitation and other circumstances, and by admissions. Where the marriage is sought to be established by a marriage certificate, or a certified copy of the record, there should be something more than a mere production of the certificate, or a copy thereof. There also should be some evidence showing the identity of the parties. But evidence that the real name of the parties differed from the names stated in the marriage certificate is admissible. (1 Cyc. 964 and cases; *People v. Stokes,* 71 Cal. 263, 12 Pac. 71.) While the preliminary proof that the defendant was the same person as named in the marriage certificate was not as definite as it might have been, yet we think such fact was sufficiently made to appear from the evidence. At any rate, the error, if any, is entirely harmless.

Because of the error in the charge heretofore pointed out, the judgment of the court below is reversed, and a new trial granted.

FRICK, J., concurs.

McCARTY, C. J. (concurring in part and dissenting in part.)

I concur in the reasoning of my Brethren and in the conclusions reached by them in the foregoing opinion on all questions therein discussed, with the exception of the part wherein they hold that the trial court did not err in its instructions defining a reasonable doubt. On this point I am unable to concur.

The law is too well settled to admit of discussion, that before a defendant in a criminal action can be legally convicted his guilt must be established by competent evidence beyond a reasonable doubt; and if any one of the jurors, after a fair and impartial consideration of all the evidence in the case,

entertains a reasonable doubt as to defendant's guilt he cannot be convicted. The part of the instruction upon which error is based, so far as material here, is as follows: "A reasonable doubt . . . exists when each juror . . . is unable to say that he has an abiding conviction to a moral certainty of the truth of the charge." In the course of the prevailing opinion it is said:

"While, true, so long as any one of the jurors entertains a reasonable doubt the defendant cannot properly be convicted. . . . But the court in effect charged the jury that if any one of them is unable to say that he has an abiding conviction, etc., then not only does there exist a reasonable doubt as to him, but also as to all the jury."

I am unable to so construe the instruction. The language of the trial court is: "When each juror is unable to say," etc., and not when any juror is unable to say that he has an abiding conviction, etc. Nor can "any" be substituted in the instruction for "each," without giving it an entirely different meaning from that which it now conveys. The office and functions of the word "each," as used in the instruction, are entirely different from the meaning of the word "any" when it is similarly used and associated. "Each," as used in the instruction, denotes every one of the jurors taken or considered one by one, whereas "any" refers to any one or more of a given number less than the whole. Therefore, as I construe the instruction, the jury were in effect told that a reasonable doubt exists only when each one of the eight jurors constituting the panel is unable to say that he has an abiding conviction to a moral certainty of the truth of the charge. That is, all the jurors must be in this state of mind before a reasonable doubt exists.

It will no doubt be conceded that the giving of the following instructions would not have been error: "When each juror after a fair and impartial consideration of all the evidence in the case, is able to say that he has an abiding conviction to a moral certainty of the truth of the charge, then you are convinced beyond a reasonable doubt." Now, if this instruction correctly states the law as far as it goes, it necessarily follows that the giving of the instruction complained of was er-

ror. For it will be observed that the word "each" performs exactly the same functions and means the same thing in the one instruction that it does in the other, namely, it refers to all the jurors considered one by one. " 'Each' denotes every one of two or more comprising the whole." (10 Am. & Eng. Enc. Law (2d Ed.), 392.) In 14 Cyc. 1129, the word "each" is defined as follows:

"Every one of any number separately considered, or every one of several. Commonly the word is understood to mean *every one* of the two or more individuals comprising the whole considered separately from the rest." The italics are mine.

Mr. Justice Straup, in the course of the opinion, after discussing the meaning and functions of the word "each," says:

"So construing the language, the instruction means unless each and every one of the jurors, all of them are able to say that he has an abiding conviction to a moral certainty of the truth of the charge, a reasonable doubt exists."

The instruction, so far as material here, reads: "A reasonable doubt . . . exists when each juror . . . is unable to say," etc. That is to say (adopting the language of the prevailing opinion) when "each and every one of the jurors, all of them," are unable to say that they have an abiding conviction to a moral certainty of the truth of the charge a reasonable doubt exists. It seems clear to me that if the word "each" includes all the jurors, both in an individual and collective sense, when used in an instruction which affirmatively states the law on the question of reasonable doubt, it must of necessity mean the same thing when used in an instruction which states the law in a negative sense. But assuming, for the purposes of this case, that according to strict grammatical construction the word "each," as used in the instruction, means any one or more of the jurors, and does not refer to or include all, I still insist that the instruction, couched as it is in a negative form, is well calculated to confuse and mislead the jury, and therefore ought to be condemned.